DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6778
    FAX: (415) 436-7234
    daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 20-CR-0029 VC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Judge: Hon. Vince Chhabria |
| MUSTAPHA TRAORE, | Sentencing Date: April 22, 2020 |
| Defendant. | Time: 10:00 a.m. |

## I.    INTRODUCTION

On March 9, 2020, Defendant Mustapha Traore pled guilty to one count of False Statement in Application for Passport in violation of 18 U.S.C. § 1542. Traore admitted that on December 6, 2011, he made a knowing false statement in his application for a U.S. Passport by claiming that his name was Olivier Adella. Dkt. 27 at 2. Defendant's false statements on the passport application included not only the false name Olivier Adella but also a birthdate he knew was not his own, and a false birthplace.

UNITED STATES' SENTENCING MEMO.
NO. 20-CR-0029 VC

1

Defendant's use of the name Olivier Adella on his passport application was part of a pattern of fraud over almost twenty years to gain immigration status in the U.S., work authorization, legal permanent residence, naturalized citizenship, and a U.S. Passport. Even after Defendant was arrested in 2016 for his role in the murder of San Mateo resident Keith Green, he continued to lie about his identity to authorities. To provide just punishment, promote respect for the law, and to protect the public, the United States respectfully requests that the Court impose a custodial sentence of 24 months, a 3-year term of supervised release, and a $100 special assessment.

## II.  SENTENCING GUIDELINES CALCULATIONS

As set forth in the PSR, the Sentencing Guidelines calculations for Traore's offense are:

a.  Base Offense Level, U.S.S.G. § 2L2.2(a):   8

b.  Specific offense characteristics under U.S.S.G. Ch. 2, § 2L2.2(b)(3)(A):   +4
Defendant fraudulently obtained or used a U.S. passport

c.  Acceptance of Responsibility, U.S.S.G. § 3E1.1:   -2

d.  Total Offense Level:   10

*See* PSR ¶¶ 201-29. Traore's criminal history score is 10 and he therefore has a Criminal History Category of V. PSR ¶¶ 38-39. The Guidelines range for imprisonment associated with offense level 10 and Criminal History Category V is 21 to 27 months. PSR ¶ 63.

## III.  GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends a guidelines sentence of 24 months' imprisonment to punish the defendant for a twenty-year pattern of lying about his identity on numerous government applications, including his 2011 passport application. The Sentencing Guidelines are "the starting point and the initial benchmark" for determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The Section 3553(a) sentencing factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, and the need to promote respect for the law. 18 U.S.C. § 3553(a).

**A.     History and Characteristics of Defendant / Circumstances of the Offense**

Defendant entered the United States in February 2002 using a fake French passport with the name Olivier Adella (a French citizen who lives on the island of Martinique).  PSR ¶¶ 10-11.  After entering the U.S., Defendant lived in New York City from 2002 until 2005 where he used the name Mussa Mustapha.  During this period, he was convicted of possession of a forged instrument, unauthorized use of a vehicle without the owner's consent, possession of stolen property, bail jumping, and petit larceny. PSR ¶¶ 32-36.  In New York City, Defendant also began dating R.W., the woman who would become his first wife. PSR ¶ 49.  Defendant and R.W. married in August 2005 in Tempe, Arizona.  Although R.W. knew the Defendant as Mustapha Traore, when R.W. and the defendant registered for an Arizona marriage certificate, she learned the defendant was using the name Olivier Adella on government documents.

In late May 2006, Defendant submitted Form I-485, Application to Register Permanent Residence or Adjust Status, to U.S. Customs and Immigration Service ("USCIS"). Pastor Decl., Ex. A (Form I-485).  On the application, Defendant listed his name as Olivier Adella, his country of birth as France, his country of citizenship as France, and his date of birth as July 17, 1975. *Id.*, Ex. A at 1.  All of these statements were false.  Defendant signed Form I-485 certifying, "under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct." *Id.* Ex. A at 4.  Along with Form I-485, Defendant submitted a copy of a fake French birth certificate with an issued date of June 20, 2005 that purported to show he was born in Sarcelles, France in July 1975. *Id.*, Ex. A at 6-7.  Defendant also attached a copy of the photograph page of the fake French passport he used to enter the United States in February 2002 and a copy of the page with the U.S. entry stamp in that passport. *Id.*, Ex. A at 8-9; *see also* PSR ¶ 11.

On August 7, 2006, Defendant completed the Application for Employment Authorization (Form I-765) to U.S. Customs and Immigration Service ("USCIS") in the name of Olivier Adella and was issued U.S. work authorization.  On May 16, 2008, Defendant obtained Legal Permanent Residence under the name Olivier Adella.

\\

On May 23, 2011, Defendant submitted Form N-400, Application for Naturalization, to USCIS. Pastor Decl., Ex. B (Form N-400). Defendant listed his legal name as Olivier Adella, his country of birth as France, his country of citizenship as France, and his date of birth as July 17, 1975. All of these statements were false. Defendant signed Form N-400 certifying, "under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct." *Id.* Ex. B at 10. On the first page of the N-400, under the "Name Change" section, Defendant requested to change his name, to: "Adella" (Last Name), "Olivier" (Given Name), and "Mustapha Traore" (Full Middle Name). Pastor Decl., Ex. B at 1. It appears that his name change request was withdrawn or denied at the time of Defendant's naturalization interview on August 5, 2011. *See id.* at 1, 10. On November 30, 2011, Defendant became a naturalized U.S. citizen in Oakland, California under the name of Olivier Adella. Pastor Decl., Ex. C (naturalization certificate).

On December 6, 2011, Defendant applied for a U.S. Passport at the post office in Millbrae, California. On the passport application, Defendant falsely stated that his name was Olivier Adella, that he was born in Sarcelles, France, and that his birthdate was July 17, 1975. PSR ¶ 12. As proof of citizenship, he submitted the certificate of naturalization he had been issued under the name Olivier Adella. *Id.* As proof of identity, he presented a California driver's license with the name Olivier Adella. *Id.* Traore swore under oath to the passport clerk that the information on the passport application was true and that the photograph attached to the application was a true likeness of Olivier Adella. *Id.*

### B. Defendant's Criminal History Is Not Overstated

The PSR Sentencing Recommendation notes that Criminal History Category V "may overstate Mr. Traore's criminal history" because Defendant "had no criminal events between 2005 and 2016." *Id.* The government respectfully disagrees.

#### 1. Criminal Conduct from 2005 to 2016

From 2005 to 2016, Defendant made a series of knowingly false statements to U.S. authorities, under penalty of perjury, to obtain immigration status, legal permanent residence, naturalized U.S. citizenship, a U.S. Passport, and a renewal of that U.S. Passport. The Court should consider all of these false statements in determining the appropriate sentence in this case. *See* 18 U.S.C. § 3661; U.S.S.G.

4

UNITED STATES' SENTENCING MEMO.
NO. 20-CR-0029 VC

§ 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.") ; *United States v. Lawton*, 193 F.3d 1087, 1093 (9th Cir. 1999) (court may consider uncharged conduct in determining appropriate sentence within the guideline range), *superseded by statue on other grounds*; *Cf. United States v. Yildiz*, 404 F. App'x 71, 75 (7th Cir. 2010) ("sentencing courts have broad discretion to consider uncharged or even acquitted conduct as long as the conduct is established by a preponderance of the evidence").

### 2. Role in the Murder of Keith Green

On the night of April 28-29, 2016, Defendant took part in the murder of Keith Green. PSR ¶ 37. Although the full extent of Defendant's participation in the murder may never be known, he pled guilty to Accessory. Defendant admitted that he helped load Mr. Green's body into the trunk of his Chrysler 300, drove the body from San Mateo County across the Golden Gate Bridge, and then dumped the body down an embankment off of Highway 101 in Sonoma County. *Id.* He also admitted that he used bleach afterwards to clean the inside of his vehicle and in the trunk to eliminate evidence of blood. Pastor, Decl., Ex. D (Investigative Supplemental Report #35) at 6.

Following the murder, around May 10, 2016, Defendant applied for an expedited U.S. Passport Renewal, and again provided a false name, birthdate, and place of birth. *See* Dkt. 17, Ex. 2. Defendant received the renewal U.S. Passport on May 18, 2016. *Id.* He was arrested for Green's murder on May 20, 2016.

Defendant claims that he cooperated fully with San Mateo investigators in the murder case and that his only role in the murder was to dispose of the body. *See* Dkt. 14 at 6 ("he ultimately gave a full accounting of his knowledge of the killing"). That is not true. During Defendant's post-arrest interview, investigators confronted him about calls he made to Keith Green from a burner phone in the days before the murder and the day of the murder. He gave uncooperative and evasive answers. Pastor, Decl., Ex. D at 11. The claim that Defendant fully cooperated is also belied by Defendant's continuing lies to state investigators about his true identity until private detectives hired by the co-defendants

uncovered evidence that his name was not Olivier Adella.

### C. Punishment and Respect for the Law

Defendant entered federal custody on January 10, 2020.  PSR ¶ 4.  The judge presiding over the San Mateo murder case remanded him to state custody on September 12, 2019 (and he remained there until January 10, 2020) because he contacted a potential trial witness for the co-defendants in violation of the judge's orders.  *See* Dkt. 16 at 5.  Thus, Defendant has served roughly four months in custody for this case. That is not sufficient to punish Defendant's nearly two decades of fraudulent conduct.

## IV.   CONCLUSION

In contrast to the many immigrants who come to the United States, work hard to secure better lives, and obey the law, Defendant came to the United States under fraudulent pretenses and committed a series of crimes.  He doubled down on his use of fake passport to enter the country by repeatedly lying to U.S. authorities to obtain immigration status, permanent residence, citizenship, and a U.S. Passport.  He now faces the consequences of twenty years of lies only because his deception was detected after he pled guilty to accessory to murder.  There is no excuse for these actions.  The government respectfully asks the Court to sentence Defendant to twenty-four months' imprisonment, three years of supervised release, and a $100 special assessment.

DATED:  April 25, 2020                                         Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/ *Daniel Pastor*
DANIEL PASTOR
Assistant United States Attorney